**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON   DIVISION**
**CIVIL ACTION NO.  7:18-cv-10**

TRIDENT ATLANTA, LLC,
DUAL ENERGY, LLC, and
CYNERGETIC AR, LLC                      )
                                        )
                                        )
Plaintiffs,                             )
                                        )
v.                                      )        TRIAL BY JURY DEMANDED
                                        )
CHARLIE GRAINGERS                       )
FRANCHISING, LLC, CHARLIE               )
GRAINGERS FRANCHISING, INC.,            )
LOUIS CRAIG NORTH, GREGORY              )
BRUCE GEORGE,                           )
and JASON MATTHEW NISTA,                )
                                        )
              Defendants.               )

## I.  PARTIES

1.      The Plaintiffs herein are:

    a.  Trident Atlanta, LLC ("Trident"), a  Georgia limited liability company, with its

headquarters located at 180 Industrial Park Circle, Lawrenceville, Georgia; and

    b.  Dual Energy, LLC ("Dual Energy") an Alabama limited liability company, with

its headquarters located at 1701 Opelika Road, Phenix City, Alabama; and

    c.  Cynergetic AR, LLC ("Cynergetic"), a Florida limited liability company, with its

headquarters located at 230 Canal Blvd #4,Ponte Vedra Beach, Florida;

2.      Acting by and through the undersigned counsel, those Plaintiffs file this Complaint against the following Defendants:

a.  Charlie Graingers Franchising, LLC ("CG, LLC"), a North Carolina limited liability company, the principal office of which is now, or was formerly,  located at 2038 Oleander Drive, Wilmington, NC, 28403, the registered office of which is 1319 Military Cut-Off Road, CC 199, Wilmington, NC, 28405.  CG, LLC was converted to Charlie Graingers Franchising, Inc. on or about March 14, 2017;

b.  Charlie Graingers Franchising, Inc. ("CG, Inc."), a North Carolina corporation, the principal office of which is located at 2038 Oleander Drive, Wilmington, NC, 28403, the registered office of which is 1319 Military Cut-Off Road, CC 199, Wilmington, NC, 28405.  CG, Inc. was formerly known as Charlie Graingers Franchising, LLC (see above), which was converted to CG, Inc. on or about March 14, 2017;

c.  Louis Craig North, an individual, a North Carolina resident currently residing at 323 Lafayette Street, Wilmington, North Carolina, 28411;

d.   Jason Matthew Nista, an individual,  a North Carolina resident currently residing at 800 Seven Oaks Drive, Wilmington, North Carolina, 28411;

e.  Gregory Bruce George, an individual, a North Carolina resident currently residing at 644 Fort Fisher Blvd, Apt. 3, Kure Beach, North Carolina, 28449, and allege as follows:

3.      The Defendant Charlie Graingers Franchising, LLC ("CG, LLC" hereafter) at all relevant times conducted business throughout  North Carolina, and also within the states of Georgia, Alabama, South Carolina, and Florida.

4.      The Defendant Charlie Graingers Franchising, Inc. ("CG, Inc." hereafter) was a successor entity to CG, LLC, and also at all relevant times conducted business throughout North Carolina, and also within the states of Georgia, Alabama, South Carolina, and Florida.

## II. JURISDICTION AND VENUE

5.      This court has jurisdiction over this action, and over the parties hereto, pursuant to 28 U.S.C. 1331 (federal question), and 28 U.S.C. 1332 (diversity of citizenship).   Venue is proper in this court pursuant to 28 U.S.C. 1391.

## III.   GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

6.      At all relevant times the defendant North owned a controlling interest, and was a founding member, of CG, LLC, was a managing member of CG, LLC, and participated in the ongoing management, operations and control of CG, LLC, including but not limited to the development of the CG franchise concept and system, the offering of CG franchises to each of the Plaintiffs, and to others, and the ongoing implementation and operations of the CG franchise concept, and the CG, LLC enterprise.

7.      At all relevant times the defendant North owned an interest in CG, Inc., was an officer and director of CG, Inc., and participated in the ongoing management,

operations and control of CG, Inc., including but not limited to the development of the CG franchise concept and system, the offering of CG franchises to each of the Plaintiffs, and to others, and the ongoing implementations and operations of the CG franchise concept, and the CG, Inc. enterprise..

8.     At all relevant times the defendant Nista owned an interest in CG, LLC, was a managing member of CG, LLC, and participated in the ongoing management, operations and control of CG, LLC, including but not limited to the development of the CG franchise concept and system, the offering of CG franchises to each of the Plaintiffs, and to others, and the ongoing implementations and operations of the CG franchise concept, and the CG, LLC enterprise.

9.     At all relevant times the defendant Nista owned an interest in CG, Inc., was an officer and director of CG, Inc., and participated in the ongoing management, operations and control of CG, Inc., including but not limited to the development of the CG franchise concept and system, the offering of CG franchises to each of the Plaintiffs, and to others, and the ongoing implementations and operations of the CG franchise concept, and the CG, Inc. enterprise.

10.     At all relevant times the defendant George owned an interest in CG, LLC, was a managing member of CG, LLC, and participated in the ongoing management, operations and control of CG, LLC, including but not limited to the development of the CG franchise concept and system, the offering of CG franchises to each of the Plaintiffs, and to others, and the ongoing implementations and operations of the CG franchise concept, and the CG, LLC enterprise.

11.     At all relevant times the defendant George owned an interest in CG, Inc., was an officer and director of CG, Inc., and participated in the ongoing management, operations and control of CG, Inc., including but not limited to the development of the CG franchise concept and system, the offering of CG franchises to each of the Plaintiffs, and to others, and the ongoing implementations and operations of the CG franchise concept, and the CG, Inc. enterprise.

12.     The individual Defendants North, Nista, and George, in combination with one another, created CG, LLC, as a North Carolina limited liability company, intended to be operated as a separate enterprise, on or about May 13, 2015.   The individual Defendants then converted CG, LLC, to CG, Inc., on or about March 14, 2017.   CG, Inc. is currently operating.     These separate enterprises were created by the individual Defendants for the purpose of carrying out, aiding and abetting the wrongful activities of the Defendants as alleged hereafter,

13.     After the creation of CG, LLC in May, 2015, in the Fall of 2015, CG, LLC, and the individual   Defendants North, Nista, and George, represented, or caused to be represented, to the Plaintiffs, and to many other prospective franchisees, that they had developed   a franchise concept and system for the franchised operation of restaurants under the CG name/trademark.   Defendants presented to each of the Plaintiffs by U.S.mail, other delivery service, and/or via email/wire, the franchise "Area Representative" disclosure document ("FDD") required to be presented to all prospective franchisees pursuant to Federal law, setting forth express disclosures and representations, required to be truthful and complete with regard

to all information related to 22 different fact disclosure categories, in accordance with Federal law *(16 CFR 436.1 et seq.).* That FDD bore the title of *"Franchise Disclosure Document for Charlie Graingers World Famous Hot Dogs".* A representative copy of the "Area Representative" FDD document is attached as **Exhibit 1** to this Complaint. The contents of the Defendants' "Area Representative" FDD documentation expressly represented to each of the Plaintiffs that the Defendants would:

a. Grant to each of the Plaintiffs the right to develop and operate, and the right to offer to third parties, CG franchises, and to establish, develop and support CG franchised stores, using CG's single (franchise) unit, and CG's "multi-unit (franchise) franchise agreements, within a defined geographic area, using the CG "system and concept" represented by the defendants to the Plaintiffs.

b. Require each Plaintiff to establish and directly operate at least a single CG franchise store pursuant to the terms of a CG single unit (franchise) agreement, within the geographic territory granted to each Plaintiff;.

c. Provide a "confidential operating manual" containing "mandatory specifications, standards, operating procedures and rules";

d. Provide a representative to assist in site selection, and advice about selecting and analyzing sites for the establishment of CG franchises, as well as assistance in the site selection process by considering population density, traffic

patterns, and proximity of proposed sites to other CG franchises/stores, or any other reasonable criteria;

    e.   Provide site evaluations for franchise store locations;

    f.   Provide advice regarding the negotiation of leases or purchases of sites at which the Plaintiffs' store(s), and the stores of third parties acquiring a CG franchise within the territory granted to each Plaintiff, would be located;

    g.   Provide site construction standards/specifications and approvals, and assistance in the development and planning of any construction or remodeling with respect to sign specification and colors, franchise layout, and design;

    h.   Provide assistance with equipment, signs, fixtures, opening inventory and supplies;

    i.   Provide to each Plaintiff and third party franchisee a list of the names of approved suppliers, and interior design firms, and provide written specifications for items to be provided by those identified vendors/service providers;

    j.   Provide a comprehensive training program consisting of not less than 34 hours, by instructors "having many years of restaurant and hotdog specific experience", as well as training materials consisting of manuals, forms, training aids and videos.

    k.   Research new equipment, supplies, services and methods of doing business, and provide Plaintiffs and third party franchisees with information concerning developments related to this research;

l.   Offer a reasonable amount of continuing advisory services by telephone during normal business hours, as well as franchise store/site visits by CG field representatives, and on-site consultation or advisory services that Plaintiffs and third party franchisees requested;

m.   Include information about each franchise location on the CG website;

n.   Provide for access by Plaintiffs and third party franchisees to a toll-free support line;

o.   Provide marketing, promotional materials and services to Plaintiffs and to third party franchisees, which materials may include video and audio tapes, copy ready print marketing materials, posters, banners and miscellaneous items;

p.   Provide to each Plaintiff and third party franchisee, and the franchise system, a national marketing program to which each Plaintiff, third party franchisee, and other franchisees throughout the system, would provide regular maintenance royalty payments, which payments would be held in a separate financial account;

q.   Representing to each Plaintiff and third party franchisee that the length of time between the signing of a franchise agreement and the opening of a CG franchised business was estimated to be approximately 2 to 4 months;

r.   That the Defendants had established "Charlie Graingers University" to provide to each Plaintiff, to third party franchisees, and to the franchise system, complete initial, and ongoing, training and education with regard to all aspects of the CG "concept and system". Additionally, that  Defendants would assist each

Plaintiff and third party franchisee in the management and selection and training of all personnel, and would provide to each Plaintiff "several other opportunities to receive training and improve your sales and employees' skills", to include: grand opening support; a CG administration website comprised of tools to assist each Plaintiff and third party franchisee in the operation of their business, as well as a message board where "ideas could be exchanged"; a "franchisee news" support tool that would represent "the primary source of communication between versions of the manuals and reflects the latest information or company policy in the operation of [plaintiff's] Outlet"; "annually or as needed" store visitations for the purpose of conducting training, reviewing strategy, and making recommendations "as to how to increase store sales and profits"; conference calls on "an as needed basis…for training, etc. in support of your store".

14.     In conjunction with providing each of the Plaintiffs with the FDD disclosure documentation, the Defendants also provided additional written documentation containing numerous representations to each Plaintiff, via U.S.mail, other delivery service, and/or via email/wire.  *See,* examples of such representations attached as **Exhibit 2** to this Complaint.  Such representations stated expressly, in writing, and consistent with the representations made to each of the Plaintiffs in the Defendants' FDD disclosure documentation that:

    a.     The defendant North had over 40 years of restaurant experience, and had full knowledge and experience with regard to the CG franchise "concept and system";

b.      The CG franchise concept had minimal business hours (11AM-4PM), and required only 3 employees;

c.      The CG franchise was a "low cost-low overhead foolproof restaurant concept" that was "guaranteed to be successful";

d.      The initial investment would be $304,500-$595,500, broken down as a $158,500 franchise fee, $114,500-$345,500 cost to open the single store each Plaintiff was required to open and operate, and $32,000-$92,000 for all other overheads/costs remaining;

e.      The CG "concept and system" was fully developed, and that CG would provide to the Plaintiffs, and to third party franchisees, a national marketing program, solicit national accounts, provide complete training in the CG "concept and system", and had national food supply pricing agreements in place;

f.      CG, and the individual Defendants, and their representatives/employees, would be "by your side" throughout the entire franchise implementation and operation process;

g.      Food preparation time was minimal based upon a limited menu.

h.      CG had a "franchise real estate department" that had "connections across the country with the local agent in your area to assist with site selection, lease negotiation and site due diligence";

i.      In conjunction with CG's "local agent", a CG "team" would travel to each Plaintiff's territory and, using CG's "own selection

specifications", would help each of Plaintiffs, and third party franchisees, to "find the grade A location";

j.     "As one of the strongest advantages of our team" CG would provide lease negotiation assistance that would best fit the anticipated volume of each Plaintiff's, and third party franchisee's, restaurants

k.     The Defendants would provide "start-up manuals" that would cover all aspects of a buildout of each Plaintiff's and third party franchisee's restaurant, as well as a guide on how to market the restaurants;

l.     An "operations manual" would be provided containing a "day-to-day guide of how to run a restaurant, and what makes [CG] successful";

m.     That a complete "employee handbook" would be provided including how to discipline employees, promote employee rules, and how to "promote, train, and create a great [CG] team";

n.     A complete "talent acquisition book" would be provided to guide each of the Plaintiff's, and third party franchisees, with regard to the hiring process, and "how to recognize talent early, and promote from within";

o.     That a "menu and recipe book" would be provided which would include guidance on how to keep each Plaintiff's and third party franchisee's "food costs in line with (CG) standards";

p.       Both classroom and in-store "extensive training" would be provided using the resources of "Charlie Graingers U";

q.       CG would provide to each Plaintiff, and third party franchisee, a relationship with CG's national food supplier, represented to be US Foods, which supplier   would provide a website for training, including ordering, recipe building, inventory control, and other restaurant operation issues;

r.       CG would provide to each Plaintiff, and third party franchisee, a relationship with Pepsi, with which the Defendants represented they had a national account including "some of the lowest prices offered in the restaurant business". The Defendants also represented that Pepsi would help each Plaintiff, and third party franchisee,   "fund some marketing efforts, as well as send you rebate checks depending upon the volume you sell";

s.       After each Plaintiff, and third party franchisee, opened its store, CG would schedule and/or facilitate weekly conference calls "with every location, designed to create an open forum on what is working, and what is not", which conference calls would also include "numbers review, marketing ideas, and upcoming events";

t.       The Defendants would work with CG's "corporate team and the use of our national contracts" to consistently review your operating expenditures and to "create plans to cover the two most difficult parts of a restaurant – food and labor costs";

u.      The Defendants would work with and/or facilitate "regional marketing partners" to design, implement and simplify a marketing strategy for each Plaintiff's and third party third party franchisee's restaurant, to include the creation and maintenance of each Plaintiff's "social media strategy and event promotion";

v.      The Defendants were, "here for you [Plaintiffs and third party franchisees]. We want your franchise to become the family that our locations have become, and our goal is to do everything in our power to make that happen!"

15.      In conjunction with the express representations provided by the Defendants within the Defendants' FDD documentation, and within the Defendants' other franchise offering materials, Defendants also provided each of the Plaintiffs, via U.S. mail, other delivery service, and/or via email/wire, written promotional materials describing the CG franchise "system and concept", further representing the success of the CG concept and system, emphasizing the high level of continuing "world-class" and "endless" support that would be provided by Defendants, to the Plaintiffs, and third party franchisees, and to the franchise system. *See*, **Exhibit 3** attached, examples of such promotional materials.

16.      Because of the Defendants' repeatedly and consistently represented knowledge, expertise, and experience with regard to the CG franchise "concept and system" the Defendants were offering to the Plaintiffs, which "concept and system" the Defendants expected and intended the Plaintiffs were to, and would, represent to

third parties, the nature and the content of the numerous and repeated representations made by the Defendants to the Plaintiffs with regard to the CG "concept and system", and because of the exclusive and clearly superior knowledge and position which each of the Defendants professed to have, and which each of the Plaintiff's reasonably relied upon, each of the Plaintiffs placed their trust and confidence in the Defendants, and in the Defendants' representations, with regard to the Defendants representations and action regarding and related to the CG franchise offering being represented to the Plaintiffs by the Defendants, which "concept and system" the Plaintiffs were intended and expected by the Defendants to be offered to third parties.

17.     As expected and intended by the Defendants, the Defendants took advantage of their position of trust and confidence which they had, by their actions as alleged, created, resulting in the  Plaintiffs reliance upon the representations of the Defendants provided to the Plaintiffs as identified above, including but not limited to those representations provided to them in Defendants' FDD documentation and the materials presented in accordance, and consistent with, those required disclosures as alleged herein.

18.     In reliance on the many representations provided to them by the Defendants, and placing their trust and confidence in the Defendants, the Plaintiffs each decided to proceed with the acquisition of a CG "Area Representative" franchise from Defendants.

19.     The representations of the Defendants to the Plaintiffs thereafter proved to be false in that:

   a.     There was no meaningful "confidential operating manual" containing "mandatory specifications, standards, operating procedures and rules";

   b.     Defendants did not have, or have access to, any "representation" to meaningfully assist Plaintiffs, or third-party franchisees, in site selection, nor to provide meaningful advice about selecting, nor for meaningfully analyzing, a site for the establishment of a franchise,    nor to provide meaningful assistance in the site selection process by considering population density, traffic patterns, and/or proximity of the proposed site to other CG franchises/stores or any other reasonable criteria;

   c.     Defendants had no ability to provide meaningful site evaluations;

   d.     Defendants had no meaningful ability to provide advice regarding the negotiation of the lease, or purchase, of a franchise site;

   e.     Defendants had no meaningful ability to provide site construction standards/specifications and approvals, nor to provide meaningful assistance in the development and planning of any construction or remodeling with respect to sign specification and colors, franchise layout and design;

   f.     Defendants had no ability to provide meaningful assistance with regard to equipment, signs, fixtures, opening inventory and supplies;

g.      Defendants had no meaningful ability to provide Plaintiffs, or third-party franchisees, with a list of the names of approved suppliers or interior design firms, nor to provide written specifications for those items;

h.      Defendants had no meaningful ability to provide a comprehensive training program.  Defendants failed to provide training materials consisting of meaningful manuals, forms, training aids and videos.  Defendants also failed to provide training by instructors "having many years of restaurant and hotdog specific experience";

i.      Defendants failed to provide meaningful research regarding new equipment, supplies, services and methods of doing business, and  failed to provide Plaintiffs/franchisees with meaningful information concerning developments related to  the purported  "research";

j.      Defendants failed to offer to the Plaintiffs/franchisees the promised reasonable amount of continuing advisory services by telephone during normal business hours, failed to provide meaningful visits to franchisees/Plaintiffs' locations by CG field representatives, and provided no meaningful  on-site consultation or advisory services requested by the Plaintiffs, as had been promised;

k.      Defendants failed to provide accurate and complete information about each franchise location on the CG website;

l.      Defendants failed to provide access for franchises to a toll-free support line;

m.      Defendants failed to provide meaningful marketing, promotional materials, and services, which materials and services Defendants promised were to include video and audio tapes, copy ready print marketing materials, posters, banners and other miscellaneous items;

n.      Defendants failed to provide the promised national marketing program;

o.      Defendants misrepresented that the length of time between the signing of a franchise agreement and the opening of a franchise was reasonably estimated to be approximately 2 to 4 months;

p.      Defendants misrepresented that the Defendants had established a "Charlie Graingers University" to provide to franchisees, and to the franchise system, meaningful and complete initial, and ongoing, training and education with regard to all aspects of the CG "concept and system".

q.      Defendants misrepresented  that the Defendants would assist  in the management and selection and training of all personnel, and would provide to the Plaintiffs, and to third party franchisees, "several other opportunities to receive training and improve your sales and employees' skills" to include: grand opening support; a CG administered website comprised of tools to assist the Plaintiff in the operation of each Plaintiff's and third party franchisee's business, as well as a message board where "ideas could be exchanged"; a "franchisee news" support tool that would represent "the primary source of communication between versions of the manuals and reflects the latest information or company

policy in the operation of [franchisee] Outlet"; "annually or as needed" store visitations for the purpose of conducting training, reviewing strategy, and making recommendations "as to how to increase store sales and profits"; conference call's on "an as needed basis…for training, etc. in support of your store".

r.      Defendants misrepresented that the Defendant North had over 40 years of restaurant experience, and had full knowledge and experience with regard to the CG franchise "concept and system" being offered to the Plaintiffs, and intended by the Defendants to be offered by the Plaintiffs   to other prospective third party franchisees;

s.      Defendants misrepresented that the CG franchise had minimal business hours (11AM-4PM), and required only 3 employees;

t.      Defendants misrepresented that the CG franchise was a "low cost-low overhead foolproof restaurant concept" that was "guaranteed to be successful";

u.      Defendants misrepresented the initial investment that would be required by the Plaintiffs, and by each of the prospective third party franchisees to whom the defendants expected, and intended, the plaintiffs would offer a CG franchise.

v.      Defendants misrepresented that the CG "concept and system" was fully developed, and that CG would provide a national marketing program, had and would solicit national accounts, provide complete training in the CG "concept

and system", and had national food supply pricing agreements in place;

w. Defendants misrepresented that CG, and the individual Defendants,

and their representatives/employees, would be "by your side" throughout the entire franchise implementation and operation  process;

x. Defendants misrepresented that CG had a "franchise real estate department" that had "connections across the country with the local agent in your area to assist with site selection, lease negotiation and site due diligence";

y. Defendants misrepresented that, in conjunction with CG's "local agent", a CG "team" would travel to each Plaintiff's granted territory and, using CG's "own selection specifications" would help each  Plaintiff and third party franchisee to "find the grade A location";

z. Defendants misrepresented that, "[A]s one of the strongest advantages of our team" CG would provide lease negotiation assistance that would best fit the anticipated volume of each of the Plaintiff's, and third party franchisee's, restaurants

aa. Defendants misrepresented that the Defendants would provide "start-up manuals" that would cover all aspects of a buildout of each Plaintiff's, and third party franchisee's,  restaurant, as well as a guide on how to market the restaurant;

bb.     Defendants misrepresented that an "operations manual" would be provided containing a "day-to-day guide of how to run a restaurant, and what makes [CG] successful";

cc.     Defendants misrepresented that a complete "employee handbook" would be provided including how to discipline employees, promote employee rules, and how to "promote, train, and create a great [CG] team";

dd.     Defendants misrepresented that a complete "talent acquisition book" would be provided to guide each of the Plaintiff's, and third party franchisee, with regard to the hiring process and "how to recognize talent early, and promote from within";

ee.     Defendants misrepresented that a "menu and recipe book" would be provided that would include guidance on how to keep each Plaintiff's, and third party franchisee's, "food costs in line with (CG) standards";

ff.     Defendants misrepresented that both classroom and in-store "extensive training" would be provided using the resources of "Charlie Graingers U";

gg.     Defendants misrepresented that CG would provide to each Plaintiff, and third party franchisee, a relationship with CG's national food supplier, represented to be US Foods, which supplier's would provide a website for training, including ordering, recipe building, inventory control, and other restaurant operation issues;

hh.     Defendants misrepresented that CG would provide to each Plaintiff, and third-party franchisee, a relationship with Pepsi, with which the Defendants represented they had a national account including "some of the lowest prices offered in the restaurant business". The Defendants also misrepresented that Pepsi would help each Plaintiff, and third-party franchisee, "fund some marketing efforts, as well as send you rebate checks depending upon the volume you sell";

jj.     Defendants misrepresented that, after each Plaintiff, or third-party franchisee, opened its store, CG would schedule and/or facilitate weekly conference calls "with every location, designed to create an open forum on what is working, and what is not", which conference calls would also include "numbers review, marketing ideas, and upcoming events";

jj.     Defendants misrepresented that Defendants would work with CG's "corporate team and the use of our national contracts" to consistently review your operating expenditures and to "create plans to cover, the two most difficult parts of a restaurant – food and labor costs";

kk.     Defendants misrepresented that the Defendants would work with "regional marketing partners" to design, implement and simplify a marketing strategy for each Plaintiff's, or third-party franchisee's, restaurant, to include the creation and maintenance of each Plaintiff's, and third-party franchisee's, "social media strategy and event promotion";

ll.     Defendants misrepresented that the Defendants were, "here for you [franchisees/Plaintiffs]. We want your franchise to become the family that our locations have become, and our goal is to do everything in our power to make that happen!"

19.   The Defendants have therefore, by their conduct, organized and established, participated in, directed, and furthered, the operations and/or the management of a wrongful combination, and enterprise, through which they have collectively engaged in a pattern of activity by their predicate acts as alleged, and as stated and identified   further hereafter.

20.   The enterprise consisted, and consists, of the Defendant entities CG, LLC, and CG, Inc., both of which have operated at all times relevant to the allegations of this complaint in interstate commerce.

21.   Each of the individual Defendants occupied, and occupies, a position in the chain of command and/or control of the actions and activities of the enterprise, and/or has, and is, knowingly implementing the decisions of the enterprise, and/or is/was indispensable to achieving the enterprise's goals, and/or was/is engaged in the improper and illegal course of conduct of the enterprise in interstate commerce as alleged herein.

22.   Each of the individual Defendants was, and is, aware of the essential nature and scope of the enterprise, and intended to participate in the furtherance of the objectives of the enterprise, and in the illegal and improper course of conduct of the enterprise in interstate commerce, as alleged herein.

Page 22 of   41

23.     The Defendants, and each of them, continue their alleged wrongful actions, and enterprise(s), as alleged herein, in violation of applicable law as alleged herein.

24.     Based upon the knowledge and belief of the Plaintiffs, the Defendants have sold/transferred/assigned a part of the assets of CG, Inc. to third parties.   Subject to further investigation and discovery, it is reasonably suspected that one or more of the Defendants has combined with such third parties in conjunction with such transaction(s) with the intention of continuing the wrongful activities alleged herein.

**Predicate Criminal Violations of Federal Wire Fraud Statute, 18 U.S.C. § 1343**

25.     The Defendants could be charged and convicted of multiple, related violations of the law,   which form a pattern and practice, and which violations are each potentially punishable by more than one year in jail, constituting wire fraud.

26.     Defendants further acted in criminal violation of the federal wire fraud statute under the provisions of 18 U.S.C. 1343, which provides:

    a.      Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

27. Defendants devised, or intended to devise, a scheme or artifice meant to defraud and/or to obtain money or property from the Plaintiffs with regard to Defendants' development, offering, sale, implementation, operation, *etc.,* of their enterprise as Charlie Graingers Franchising, LLC, and/or Charlie Graingers Franchising, Inc., as alleged herein.

28. Defendants utilized false and/or fraudulent pretenses, representations, and/or promises in order to defraud and/or obtain money from the Plaintiffs for such purposes as alleged herein, and for the benefit of the Defendants, and others in association with them.

29. Defendants transmitted, or caused to be transmitted, by means of wire, radio, or television communication, in interstate or foreign commerce, writings, signs, signals, pictures, or sounds, for the purpose of executing such scheme or artifice, when they transmitted telephone and cellular telephone calls, documents, facsimiles, emails, instant messages, and any other form of communication to the Plaintiffs and to others.

30. Violation of 18 U.S.C. § 1343 is felony punishable by 20 years of imprisonment, and a fine of $1 Million USD.

**Predicate Criminal Violations of Federal Mail Fraud Statute, 18 U.S.C. § 1341**

31. The Defendants could be charged and convicted of multiple related violations of law which form a pattern and practice, and which violations are each potentially punishable by more than one year in jail constituting mail fraud.

32. Defendants acted in criminal violation of the federal mail fraud statute under 18

U.S.C. § 1341, which provides:

a.     Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

33.    Defendants devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or property from  the Plaintiffs with regard to Defendants' development, offering, sale, implementation, operation, etc., of their enterprise as Charlie Graingers Franchising, LLC, and/or Charlie Graingers Franchising, Inc., as alleged herein.

34.    Defendants utilized false and/or fraudulent pretenses, representations, and/or promises in order to defraud and/or obtain money from the Plaintiffs with regard to Defendants' development, offering, sale, implementation, operation, *etc.,* of

Page 25 of  41

their enterprise as Charlie Graingers Franchising, LLC, and/or Charlie Graingers Franchising, Inc., as alleged herein..

35. In order to achieve, or attempt to achieve, the fraud described in the preceding paragraphs, Defendants sent correspondence and other documents that were sent or delivered by the U.S. Postal Service, other delivery service, and/or by wire/email to the Plaintiffs and to others.

36. Violation of 18 U.S.C. § 1341 is felony punishable by 30 years of imprisonment, and a fine of $1,000,000 USD.

## IV.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### FRAUD; INTENTIONAL MISREPRESENTATION/CONCEALMENT

37. Plaintiffs incorporate herein by reference all preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

38. By their actions and omissions, individually and collectively, including but not limited to their multiple violations of applicable law, including Federal laws, the Defendants have falsely represented and/or concealed many material facts related to the CG franchise offering made by Defendants to the Plaintiffs.

39. The actions and omissions of the Defendants, individually and collectively, were reasonably calculated and intended to deceive the Plaintiffs, and each of them.

40. The actions and omissions of the Defendants, individually and collectively, did in fact deceive the Plaintiffs, and each of them.

41.   As a direct and proximate result of the Defendants' actions, misrepresentations, concealments and omissions, Plaintiffs, and each of them, are entitled to actual, compensatory, and special damages suffered by them, in an amount in excess of $75,000.

42.   Plaintiffs are also entitled to punitive/exemplary damages, as a result of the alleged wrongful actions, misrepresentations, concealments and omissions of the Defendants.

## SECOND CAUSE OF ACTION:
## NEGLIGENT MISREPRESENTATON

43.   Plaintiffs incorporate herein by reference all preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

44.   By their actions and omissions, individually and collectively, the Defendants negligently and falsely represented and/or concealed, Defendants' actions for the purpose of depriving the Plaintiffs, and each of them, of their assets, resources and property.

45.   The actions and omissions of the Defendants, individually and collectively, including the negligent misrepresentations, omissions, and concealments of the Defendants, were reasonably calculated and intended to deceive the Plaintiffs, and each of them.

46.   The actions and omissions of the Defendants did in fact deceive the Plaintiffs.

47.   As a direct and proximate result of the Defendants' actions, misrepresentations, concealments and omissions, Plaintiffs, and each of them, are entitled to actual,

compensatory, and special damages suffered by them, in an amount in excess of $75,000.

48.     Plaintiffs are also entitled to punitive/exemplary damages as a result of the alleged wrongful actions, misrepresentations, concealments and omissions of the Defendants.

### THIRD CAUSE OF ACTION:
### CONSTRUCTIVE FRAUD

49.     Plaintiffs incorporate herein by reference all preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

50.     A relationship of trust and confidence, existed between the Defendants, individually and collectively, and each of the Plaintiffs, as a result of the superior and exclusive knowledge, alleged expertise, and experience with regard to the purported and misrepresented CG franchise "concept and system", upon which knowledge, alleged expertise and experience, Defendants expected and intended the Plaintiffs to rely in good faith, and upon which each of the Plaintiffs did, in fact so rely.

51.     By their actions, including but not limited to the Defendants' collective, and individual  failure to disclose all material facts to the  Plaintiffs as alleged previously, and the Defendants' breach of their obligations  to Plaintiffs in a manner that was intended to deceive each of the Plaintiffs, and to violate public and/or private confidence, the Defendants collectively, and individually,  took advantage of and violated  their  position of trust and confidence in order to

benefit themselves collectively, and individually, and with regard to the enterprise they were engaged in.

52. The actions and omissions of the Defendants, collectively and individually, did in fact deceive the Plaintiffs, and each of them.

53. The benefit sought by the Defendants from their wrongful actions was more than a continued relationship with Plaintiffs, or payment of any fee to the Defendants for work actually performed by them for the benefit of the Plaintiffs.

54. As a direct and proximate result of the Defendants' actions, misrepresentations, concealments and omissions, and violation of their joint and several obligations arising out of the relationship of trust and confidence with the Plaintiffs, and each of them, the Plaintiffs are entitled to actual, compensatory, and special damages suffered by them, in an amount in excess of $75,000.

55. Plaintiffs are also entitled to punitive/exemplary damages as a result of the alleged wrongful actions, misrepresentations, concealments and omissions of the Defendants.

## FOURTH CAUSE OF ACTION:
## CONVERSION

56. Plaintiffs incorporate herein by reference all preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

57. By their individual and collective actions, omissions, concealments, and failures to act, the Defendants improperly converted the property and rights of Plaintiffs, and each of them, for Defendants' own use and benefit, thereby depriving the

Plaintiffs, and each of them, of the financial interests and benefits to which Plaintiffs were, and are, entitled.

58. As a direct and proximate result of the Defendants' actions, misrepresentations, concealments and omissions, Plaintiffs have suffered damages in an amount in excess of $75,000.

59. Plaintiffs are also entitled to punitive/exemplary damages as a result of the alleged wrongful actions of the Defendants.

**FIFTH CAUSE OF ACTION:**
**BREACH OF FIDUCIARY DUTY &**
**DUTY OF GOOD FAITH AND FAIR DEALING**

60. Plaintiffs incorporate by reference all preceding and subsequent paragraphs of this Complaint, as though fully set forth herein.

61. The misrepresentations, actions, and omissions, of the Defendants violated their obligations to deal fairly and in good faith with the Plaintiffs, and each of them.

62. The misrepresentations, actions, and omissions, of the Defendants also violated their fiduciary duties to Plaintiffs.

63. As a direct and proximate result of the Defendants' actions, misrepresentations concealments and omissions, Plaintiffs have each suffered damages in an amount in excess of $75,000.

**SIXTH CAUSE OF ACTION:**
**VIOLATION OF THE NORTH CAROLINA**
**UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

64.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs of this Complaint, as though fully set forth herein.

65.     The actions of the Defendants' as alleged herein comprise unfair and deceptive acts and practices in violation of Chapter 75 of the North Carolina General Statutes, including the violation of N.C. General Statutes sections 75-1 *et seq.*

66.     Defendants' actions were unfair or deceptive acts or practices in or affecting commerce, in a continuous effort and attempt to injure and damage the Plaintiffs, and each of them.

67.     These violations of the North Carolina Unfair and Deceptive Trade Practices Act have substantially injured, and continue to substantially injure, the Plaintiffs, and each of them.

68.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiffs, and each of them, have, and will, suffer pecuniary loss in an amount in excess of $75,000.

69.     As a result of such wrongful acts by the Defendants, Plaintiffs are entitled to actual, compensatory, and special damages.   Plaintiff is also entitled to punitive damages, and  court costs, including attorneys' fees and reasonable expert witness fees, pursuant to the North Carolina Unfair and Deceptive Trade Practices Act, including but not limited to N.C. General Statute   § 75.16.1.

## SEVENTH CAUSE OF ACTION:
## CIVIL CONSPIRACY-FACILITATION OF FRAUD

70. Plaintiffs incorporate by reference all preceding and subsequent paragraphs of this Complaint, as though fully set forth herein.

71. By their actions, and their intentions, the Defendants, and each of them, entered into an agreement between them to commit those unlawful and/or immoral acts as alleged, which included overt actions, intended to further their combination and conspiracy with the intention of committing such unlawful actions as alleged.

72. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs, and each of them, have, and will, suffer pecuniary loss in an amount in excess of $75,000.

73. As a further result of such wrongful acts by the Defendants, Plaintiffs are entitled to actual, compensatory, and special damages. Plaintiffs are also entitled to punitive damages, and court costs, including attorneys' fees and reasonable expert witness fees, in accordance with applicable law.

### EIGHTH CAUSE OF ACTION:
**Acquisition and Maintenance of an Interest in and Control of
an Enterprise Engaged in a Pattern of Racketeering Activity:
18 U.S.C. §§ 1961(5), 1962(b)**

74. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

75. During the ten (10) calendar years preceding January 1, 2017, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), as alleged herein, and did so in violation of the RICO law at 18 U.S.C. § 1962(b) (prohibited activities).

76.    Non-sovereign Defendants are each "persons" within the meaning of the Racketeer Influenced and Corrupt Organizations Act.

77.    Defendants operate, and have operated, as an "enterprise" within the meaning of RICO, the activities of which effect interstate.

78.    By virtue of the predicate acts described in this Complaint, including, without limitation, engaging in monetary transactions improperly derived from unlawful activity, Defendants transferred, received, furthered and supplied financing and income that was derived, both directly and indirectly, from a pattern of racketeering activity in which each of them participated as a principal, and used and invested, both directly and indirectly, such income and the proceeds of such income, in establishing, operating and furthering illegal enterprises in violation of 18 U.S.C. § 1962(a).

79.    As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(a), Plaintiffs, and each of them, have suffered the loss of valuable property, financial services and support, and suffered other business and pecuniary damages.

80.    Plaintiffs further allege that all Defendants did commit two (2) or more of the offenses identified herein in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. § 1962(b) *supra.*

81.    18 U.S.C. § 1964(c) defines "racketeering activity" as follows:

(1) "racketeering activity" means

        (A) any act or threat involving murder, kidnapping, gambling,

Page 33 of   41

arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;

(B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons)., [1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for hire),

section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials),

(C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501 (c) (relating to embezzlement from union funds),

(D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States,

(E) any act which is indictable under the Currency and Foreign Transactions Reporting Act,

(F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or

(G) any act that is indictable under any provision listed in section

Page 35 of   41

2332b (g)(5)(B).

82.    By their actions, and their intentions, as alleged herein, the Defendants, in conjunction with the Defendant enterprise(s), have committed those unlawful acts as alleged, which included overt actions, intended to further their combination and conspiracy with the intention of committing such unlawful actions as alleged in violation of RICO, including but not limited to violating the provisions of 18 U.S.C. §§ 1961(5), 1962(b).

83.    Plaintiffs, and each of them, request that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory, actual and special damages, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, costs, and an award that this Court deems just and proper.

### NINTH CAUSE OF ACTION:

**Private Cause of Action-RICO Violation: Conduct and Participation in
a RICO Enterprise through a Pattern of Racketeering Activity:
18 U.S.C. §§ 1961(5), 1962(c)**

84.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein, and specifically repeat and re-allege the allegations concerning Defendants' RICO violations and liability.

85.    All Defendants did associate with a RICO enterprise of individuals who were associated in fact, and who engaged in, and whose activities did affect, interstate commerce..

Page 36 of 41

86.     Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

87.     During the ten (10) calendar years preceding January 1, 2017, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(c) (prohibited activities).

88.     Plaintiffs further allege that all Defendants did commit two (2) or more of the offenses identified above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective racketeering activities, also in violation of the RICO law at 18 U.S.C. § 1962(c) *supra*.

89.     By their actions, and their intentions, as alleged herein, the Defendants, in conjunction with the Defendant enterprise(s), have committed those unlawful acts as alleged, which included overt actions, intended to further their combination and conspiracy with the intention of committing such unlawful actions as alleged in violation of RICO, including but not limited to violating the provisions of 18 U.S.C. §§ 1961(5), 1962(c).

90.     Plaintiffs, and each of them, demand that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award

of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory, actual, and special damages, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, costs, and an award that this Court deems just and proper.

## TENTH CAUSE OF ACTION:

### Conspiracy to Engage in a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(d)

91. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein, and specifically repeat and re-allege those allegations concerning Defendants' RICO liability.

92. All Defendants did conspire to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(b) and (d).

93. During the ten (10) calendar years preceding January 1, 2017, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the predicate acts that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. § 1962(d).

94. Plaintiffs further allege that all Defendants did commit two (2) or more of the offenses itemized herein in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective racketeering activities, also in violation of 18 U.S.C. § 1962(d) (prohibited activities).

95.     By their actions, and their intentions, as alleged herein, the Defendants, in conjunction with the Defendant enterprise(s), have committed those unlawful acts as alleged, which included overt actions, intended to further their combination and conspiracy with the intention of committing such unlawful actions as alleged in violation of RICO, including but not limited to violating the provisions of 18 U.S.C. §§ 1961(5), 1962(c).

96.     Plaintiffs, and each of them, demand that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964(c), compensatory, actual, and special damages, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, costs, and an award that this Court deems just and proper.


## ELEVENTH CAUSE OF ACTION:
## RESCISSION-CONTRACT VOID AND UNENFORCEABLE

97.     Plaintiffs incorporate herein by reference all preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

98.     The purported franchise agreement(s), and related documents, are void and unenforceable, have been rescinded, and are otherwise without further force or effect as a result of the wrongful actions of the Defendants.


## TWELFTH CAUSE OF ACTION:
## BREACH OF CONTRACT

99.     Plaintiffs incorporate herein by reference all preceding and subsequent paragraphs of this Complaint as though fully set forth herein.

100.    The purported franchise agreement(s), and agreements related thereto, lack any material consideration being provided to or realized by Plaintiffs.

101.    The Defendants, and each of them, failed to perform their obligations under the terms of the purported franchise agreement(s), and agreements related thereto, and have materially breached their obligations to each of the Plaintiffs.

102.    The obligations of the Defendants having been breached, and the Defendants may not seek to enforce the provisions of any such agreements.

103.    Plaintiffs, and each of them, demand that judgment be entered against Defendants for compensatory, actual, and special damages, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, costs, and an award that this Court deems just and proper.

104.    As a result of the Defendants' violation and breach of their obligations under the franchise agreements, and agreements related thereto, Plaintiffs, and each of them,   have suffered damages in an amount in excess of $75,000.

**WHEREFORE**, the Plaintiffs request the following relief:

1.      Compensatory, actual, and special damages in an amount in excess of $75,000, plus interest; and

2.      Punitive and/or exemplary damages in accordance with applicable North Carolina and Federal  law,  if so warranted,  in an amount in excess of $75,000, plus interest; and

3.  For the damage award to be trebled pursuant to applicable North Carolina and Federal law; and

4.  For the costs of this action to be taxed to the Defendants in accordance with applicable North Carolina and Federal law, if so warranted; and

5.  For an award of attorney's fees, costs, and expert witness fees, in accordance with applicable North Carolina and Federal law if so warranted; and

6.  For a trial by jury on all issues so triable; and

7.  For such other and further relief as the Court may deem just and proper.


This the 11th day of January, 2018

**THE FARRELL LAW GROUP, P.C.**

/s/ Richard W. Farrell
Richard W. Farrell, Esquire
N.C. Bar No.: 16518
Counsel for Plaintiff
5000 Falls of Neuse Rd, Suite 410
Raleigh, NC 27609
Telephone: 919-872-0300
Facsimile: 919-872-0303
Email: rfarrell@farrell-lawgroup.com
