UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-10-BO

| | | |
|---|---|---|
| TRIDENT ATLANTA, LLC, DUAL ENERGY, LLC, CYNERGETIC AR, LLC, MS. MARCIE BINDES d/b/a KS ENTERPRISES, LLC, MR. DALE ATKINSON & MRS. ROSE ATKINSON d/b/a ROSEDALE THREE, LLC, and MR. TRENT MOORE d/b/a LINDSTAN, INC., | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | O R D E R |
| CHARLIE GRAINGERS FRANCHISING, LLC, CHARLIE GRAINGERS FRANCHISING, INC., LOUIS CRAIG NORTH, GREGORY BRUCE GEORGE, and JASON MATTHEW NISTA, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on three motions to dismiss and a motion for leave to file excess pages. [DE 88, 89, 91, 93]. Each of the motions is ripe for disposition. For the reasons that follow, the motion for leave to file excess pages [DE 88] is GRANTED and the motions to dismiss [DE 89, 91, 93] are each GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In 2015, the individual defendants—Mr. Louis C. North, Mr. Gregory B. George, and Mr. Jason M. Nista—formed Charlie Graingers Franchising, LLC. [DE 85, ¶ 13]. Two years later, in 2017, they converted the LLC into Charlie Graingers Franchising, Inc., which remains in operation. *Id.* Defendants North, George, and Nista were the central figures in both entities, collectively "Charlie Graingers." The entities were created to offer "franchises to operate a hot dog restaurant" under the Charlie Graingers trade name, featuring "various hot dog recipes, beef brisket, pork barbeque, soups and side dishes." [DE 85-1, p. 2].

In October 2015, defendants North, George, and Nista drafted a Franchise Disclosure Document (FDD) to present to prospective franchisees. [DE 85, ¶ 14]. Two versions of the FDD were prepared for two different groups: prospective "area representative" franchises and prospective individual franchisees. [DE 85, ¶¶ 15–16; 85-1; 85-2]. Three of the plaintiffs in this consolidated action were area representative franchisees: Trident Atlanta, LLC in Georgia, Dual Energy, LLC in Alabama, and Cynergetic AR, LLC in Florida. [DE 85, ¶ 1]. The remaining plaintiffs were individual franchisees: Ms. Marcie Bindes, d/b/a KS Enterprises, LLC, Mr. Dale Atkinson and Mrs. Rose Atkinson, d/b/a Rosedale Three, LLC, and Mr. Trent Moore, d/b/a LindsTan, Inc. *Id.* ¶ 2. Each of the plaintiffs separately received the FDD between May 2015 and December 2015. *Id.* ¶¶ 23–24.

The FDD expressly represented that the franchisors would grant to each of the area plaintiffs the right to develop and operate Charlie Graingers franchises and to offer franchises to third parties within the designated area. *Id.* ¶ 25(a). In return, the area plaintiffs were required to establish and operate at least one Charlie Graingers restaurant in the designated area. *Id.* ¶ 25(b). In the FDD, defendants further represented to all of the plaintiffs that they would provide a wide variety of resources and operational support, including the following: an operating manual, site evaluations, advice on selecting a site and negotiating a lease, assistance remodeling and installing equipment and fixtures, help obtaining inventory and supplies, a comprehensive training program, a toll-free support line, marketing and promotional materials, and so on. *Id.* ¶ 25(a)–(r).

In the months that followed, the defendants provided further written representations to each of the plaintiffs, including that they had "[O]ver 350 Franchise Commitments," would provide "24/7-Social Media Savvy," had the "[C]leanest Restaurants in America," and that defendant North had over forty years of restaurant experience. [DE 85, ¶ 28(a)–(d); 85-3]. In these subsequent

written communications, defendants also claimed that a Charlie Graingers franchise was a "low cost-low overhead foolproof restaurant concept" that was "guaranteed to be successful." [DE 85, ¶ 28(f)]. Defendants went on to make many more representations about the strength of their national "concept and system," their supply agreements, their relationships with other brands, their "franchise real estate department" and its "connections across the country." *Id.* ¶ 28(g)–(y). Defendants then provided even more promotional materials emphasizing the "world-class" and "endless" support that the plaintiffs would receive. [DE 85, ¶¶ 29–31; 85-4].

Between September 2015 and September 2016, each of the plaintiffs entered into franchise agreements with defendants, paying at least $19,750 and as much as $158,000 in franchise fees. [DE 85, ¶¶ 35–36]. In connection with the franchise agreements, the plaintiffs also signed "General Release" documents, which provided as follows:

> [Franchisee] and its shareholders, officers, and directors does hereby release and forever discharge CHARLIE GRAINGERS FRANCHISING, LLC its, successors, agents, assigns, officers, directors, shareholders, employees, representatives, and any and all other persons, firms and corporations whatsoever, from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, both known and unknown . . . .

[DE 85-1, p. 116]. The plaintiffs also signed an acknowledgement in the franchise agreements that they had "conducted an independent investigation," that operating a franchise "involves business risk," and that they had "not received any express or implied warranty or guaranty regarding potential volume, profits, or success." [DE 85-1, p. 69–70]. The franchise agreements specified that the franchisor was not a fiduciary of plaintiffs. [DE 85-1, p. 67].

In January 2018, the area plaintiffs initiated this action, alleging that they had been fraudulently induced into entering the franchise agreements and that defendants had made intentional and negligent misrepresentations, breached their fiduciary duty and duty of good faith and fair dealing, violated North Carolina's Unfair and Deceptive Trade Practices Act, and violated

the Racketeer Influenced and Corrupt Organizations (RICO) Act. [DE 8]. Around the same time, the individual plaintiffs filed a separate action making similar allegations against the same defendants. In August 2018, the Court consolidated the two actions under Federal Rule of Civil Procedure 42(a). [DE 84].

In September 2018, plaintiffs filed an amended complaint with ten causes of action. Plaintiffs bring claims for (1) rescission of their franchise agreements; (2) fraud, intentional misrepresentation, and concealment; (3) negligent misrepresentation; (4) breach of the duty of good faith and fair dealing; (5) breach of fiduciary duty; (6) violation of North Carolina's Unfair and Deceptive Trade Practices Act; (7) acquiring or maintain an interest in an enterprise engaged in interstate commerce through a pattern of racketeering activity, in violation of 11 U.S.C. § 1962(b); (8) conducting an enterprise engaged in interstate commerce through a pattern of racketeering activity, in violation of 11 U.S.C. § 1962(c); (9) conspiring to violate the RICO Act, in violation of 11 U.S.C. § 1962(d); and (10) breach of contract. [DE 85]. Soon after, all three individual defendants, George, Nista, and North, moved to dismiss each of the claims against them on a variety of grounds. [DE 89, 91, 93]. Defendant George also filed a motion for leave to file excess pages. [DE 88]. Plaintiffs responded in opposition to each of the motions to dismiss. [DE 95, 99, 100]. No response was filed in opposition to the motion for leave to file excess pages. As each of the defendants' motions to dismiss raise similar arguments, all three will be considered together, with distinctions noted where appropriate.

## DISCUSSION

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

A complaint must state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," as merely reciting the elements of a cause of action with the support of conclusory statements does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## I. The "General Release" does not bar plaintiffs' claims.

Defendants George and North argue that all of plaintiffs' claims should be dismissed because of the "General Release" document that the plaintiffs signed at the time the franchise agreements were executed. Plaintiffs argue, however, that the General Release was induced by the defendants' fraud and the releases are therefore unenforceable. Because the Court has diversity jurisdiction over this action, North Carolina law must be applied to determine the enforceability of the purported release.

"Where there is a claim for fraud in the inducement, defenses based upon the fraudulently induced contract will not bar the claim." *Tradewinds Airlines, Inc. v. C–S Aviation Servs.*, 733 S.E.2d 162, 169 (N.C. Ct. App. 2012). Fraud in the inducement "vitiates the contract." *Id.* at 170 (citing *Laundry Mach. Co. v. Skinner*, 34 S.E. 2d 190, 192–93 (N.C. 1945)). Here, plaintiffs allege that they were fraudulently induced into executing the franchise agreements with defendants, and by extension, fraudulently induced into signing the General Release documents that defendants George and North now rely upon. Taking plaintiffs' allegations as true and drawing all reasonable inferences in their favor, plaintiffs have sufficiently alleged that the General Release was fraudulently induced and is, therefore, unenforceable.

5

Additionally, plaintiffs argue that the General Release is void because it violates federal law. In particular, they argue that the release violates the Federal Trade Commission's Franchise Rule, which provides in pertinent part that it is "an unfair or deceptive act or practice" to "[d]isclaim or require a prospective franchisee to waive reliance on any representation made in the disclosure document or in its exhibits or amendments." 16 C.F.R. 436.9(h). The release specifically provided that it "shall apply to all agreements or contracts heretofore existing or entered into by and between" the parties, which includes the disclosure documents. [DE 85-1, p. 116]. Defendants' release was an attempt to mutually waive all claims between the parties, including claims on the basis of defendants' disclosures. Accordingly, the General Release was in violation of 16 C.F.R. 436.9(h) and should not be enforced to bar plaintiffs' claims.

**II. Plaintiffs have alleged sufficient facts to support Counts 2, 3, 5, and 6.**

Plaintiffs assert ten causes of action in all. Of those ten, three are asserted only against the corporate defendants, Charlie Graingers. Of the remaining seven, plaintiffs have stated sufficient facts to prevent dismissal of the following four causes of action: (1) Count 2, plaintiffs' claim for fraud, intentional misrepresentation, and concealment; (2) Count 3, plaintiffs' claim for negligent misrepresentation; (3) Count 5, plaintiffs' claim for breach of fiduciary duty; and (4) Count 6, plaintiffs' claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act.

First, before considering each cause of action in turn, defendants George and North argue that all of the plaintiffs' tort claims are barred by the economic loss doctrine. The economic loss doctrine provides that "a tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract." *Spillman v. Am. Homes of Mocksville, Inc.*, 422 S.E.2d 740,

741–42 (N.C. Ct. App. 1992). In other words, if the action is really for breach of contract, tort claims are unavailable. But defendants' reliance on the economic loss doctrine is unavailing for the same key reason that the General Release did not bar plaintiffs' claims: a fraudulently induced contract is not valid. *Tradewinds Airlines*, 733 S.E.2d at 169–70. Plaintiffs have alleged sufficient facts, which must be taken as true, to establish that the franchise agreement was fraudulently induced. As a result, it was not a valid contract and plaintiffs are not restricted to breach-of-contract claims. Defendants' reliance on *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998), does not disturb this conclusion because *Broussard* did not involve a contract of questionable validity. In *Broussard*, the dispute turned on whether the parties had adequately performed under the terms of a valid contract; here, plaintiffs allege that they were fraudulently induced into entering a franchise relationship. The economic loss doctrine does not bar plaintiffs' claims.

Turning now to Count 2, the Court finds that plaintiffs have alleged sufficient facts to state a claim for fraud. To state a claim for fraud or intentional misrepresentation, plaintiffs must allege (1) false representation or concealment of a material fact, which is (2) reasonably calculated to deceive and is (3) made with the intent to deceive, and which (4) does in fact deceive, resulting in (5) damage to the injured party. *Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992). Plaintiffs must also comply with the requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that plaintiffs allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To meet this standard, [plaintiffs] must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *U.S. ex rel. Wilson v. Kellogg*

7

*Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

All three defendants argue that plaintiffs did not plead with particularity the time, place, and contents of their alleged false representations. Plaintiffs, however, have more than met Rule 9(b)'s requirements. Their amended complaint includes an exhaustive list of written representations that defendants made to plaintiffs concerning around-the-clock social media support, a real estate department, the strength of the franchise's "concept and system," exclusive supply contracts with major national corporations, the number of franchise commitments, and so on. These are not naked assertions or mere restatements of the legal elements of a claim, but specific—in both time and content—allegations of material misrepresentations. Rule 9(b)'s requirements are satisfied. Plaintiffs also allege that defendants' misrepresentations were made with the intent to deceive, did in fact deceive, and resulted in damages. Plaintiffs have adequately stated a claim for fraud and intentional misrepresentation and have sufficiently pleaded the particular circumstances of that claim, so Count 2 must not be dismissed.

Plaintiffs have also alleged sufficient facts to state a claim for fraudulent concealment, to the extent that such a claim exists independently from plaintiffs' claim for fraud and intentional msirepresentation. Here, plaintiffs must allege facts demonstrating, again with reasonable particularity, "(1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why [plaintiffs'] reliance on the omission was both reasonable and detrimental, and (7) the damages

proximately flowing from such reliance. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195–96 (M.D.N.C. 1997). Here, defendant North argues that plaintiffs have not adequately alleged that he had any duty to disclose additional information. As will be discussed in greater detail below, however, plaintiffs have adequately alleged that defendants were in a position of trust and confidence and therefore owed plaintiffs a duty to disclose additional information. As such, Count 2 must not be dismissed as to defendant North or any other defendant.

Plaintiffs have alleged sufficient facts to state a claim for negligent misrepresentation. To state such a claim, plaintiffs must allege facts demonstrating, with particularity, that they (1) justifiably relied (2) to their detriment (3) on information prepared without reasonable care (4) by someone who owed them a duty of care. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988); *see also Breeden*, 171 F.R.D. at 202 ("a claim for negligent misrepresentation falls within Rule 9(b)['s] requirement for pleading with particularity"). "Justifiable reliance is an essential element of both fraud and negligent misrepresentation." *Helms v. Holland*, 478 S.E.2d 513, 517 (N.C. 1996).

All three defendants again argue that plaintiffs have not pleaded their claim for negligent misrepresentation with sufficient particularity. But, for the same reasons as above, the Court is satisfied that Rule 9(b)'s requirements are met. Defendants also argue that the negligent misrepresentation claim must be dismissed for failure to plead justifiable reliance. Effectively, defendants argue that plaintiffs were responsible for independently verifying the information contained in the franchise disclosures and subsequent communications, and that their failure to exercise reasonable care in doing so made any reliance on the misleading disclosures unjustifiable. Here, however, plaintiffs have alleged sufficient facts which would make their reliance on the defendants' numerous misrepresentations justifiable. Defendants, as franchisors, were required

under federal law to make disclosures in order for prospective franchisees to rely on them. The disclosures were numerous and often related to the internal operations of Charlie Graingers such that plaintiffs could not have reasonably discerned the truth. Plaintiffs have sufficiently pleaded justifiable reliance, as well as the other elements of negligent misrepresentation, and Count 3 must not be dismissed as to any of the three individual defendants.

Plaintiffs have further alleged sufficient facts to state a claim for breach of fiduciary duty. To state a claim for breach of fiduciary duty, plaintiffs must allege (1) facts and circumstances creating a relationship of trust and confidence which (2) "surrounded the consummation of the transaction in which the defendant is alleged to have taken advantage of the relationship" and (3) that defendants took advantage of their own benefit. *Self v. Yelton*, 688 S.E.2d 34, 39 (N.C. 2010) (quoting *Sullivan v. Mebane Packaging Grp., Inc.*, 581 S.E.2d 452, 462 (N.C. 2003)).

All three defendants argue that plaintiffs have not sufficiently alleged a relationship of trust and confidence between themselves and any of the franchisees. But under North Carolina law, a fiduciary relationship can exist even outside a legally recognized context, in "any possible case in which a fiduciary relation *exists in fact*, and in which there is confidence reposed on one side, and resulting domination and influence on the other." *White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 155 (N.C. 2004) (quoting *Abbitt v. Gregory*, 160 S.E. 896, 906 (N.C. 1931) (emphasis added). Such a relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Abbitt*, 160 S.E. at 906. Thus, the existence of a fiduciary relationship "depends ultimately on the circumstances." *HAJMM Co. v. House of Raeford Farms, Inc.*, 403 S.E.2d 483, 489 (N.C. 1991). In this case, plaintiffs have alleged sufficient facts which, taken as true, establish the existence of a relationship of trust and confidence. The defendants

repeatedly held themselves out as experts in the restaurant business and had superior knowledge and experience. They were also, of course, the experts in the Charlie Graingers business and in a clearly superior position with regard to the strength of the business and the support that was being offered to prospective franchisees. Further, the FTC's Franchise Rule affirms that franchisors and prospective franchisees are not on equal footing, requiring franchisors to make complete and truthful disclosures to prospective franchisees. Taking plaintiffs' allegations as true, the amended complaint contains sufficient facts to support a claim for breach of fiduciary duty. As such, Count 5 must not be dismissed.

Finally, plaintiffs have alleged sufficient facts to state a claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen. Stat. § 75-1.1. To state such a claim, plaintiffs must allege that (1) defendants committed an unfair or deceptive act which (2) affected commerce and (3) proximately caused the plaintiffs' harm. *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 322–23 (N.C. 2006) (citing *Pleasant Valley Promenade v. Lechmere, Inc.*, 464 S.E.2d 47, 58 (N.C. 1995)).

Defendants George and North first argue that the economic loss doctrine bars plaintiffs' UDTPA claim, but for the same reasons stated above—that plaintiffs have plausibly alleged that the underlying contract was fraudulently induced and the contract therefore does not bar related tort claims—that argument fails. Defendant George next argues that plaintiffs have not sufficiently alleged that any allegedly deceptive actions or statements affected commerce, but concedes that "commerce" is broadly defined under the UDTPA. Commerce refers to "all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b). Defendant George's argument is belied by the interstate nature of the Charlie Graingers franchise, the business negotiations that the parties were

11

involved in, and the materially misleading statements that defendants were making to prospective franchisees like plaintiffs. In fact, defendants' alleged violation of the FTC's Franchise Rule is enough on its own to establish a claim under the UDTPA which survives dismissal. *See Hometown Publ'g LLC v. Kidsville News!, Inc.*, 2015 WL 13650095, at *1, 5 (E.D.N.C. Jan. 5, 2015) (finding that a violation of the Franchise Rule was sufficient to support a North Carolina UDTPA claim). Plaintiffs have adequately stated a claim for violation of North Carolina's UDTPA, so Count 6 must not be dismissed.

### III. Plaintiffs' RICO claims must be dismissed.

Plaintiffs attempt to state three claims for violation of the Racketeer Influenced and Corrupt Organizations Act. Each claim, however, rests upon one common denominator: "a pattern of racketeering activity." *Al-Abood v. El-Sahmari*, 217 F.3d 225, 238 (4th Cir. 2000); *see also* 11 U.S.C. §§ 1962(a), 1962(b), 1962(c), and 1962(d) (which requires a predicate RICO violation). A pattern of racketeering activity is further defined to mean "at least two acts of racketeering activity . . . the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 11 U.S.C. § 1961(5); *see also Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 505 (4th Cir. 1998) ("To state a claim under civil RICO, [a plaintiff] must allege at least two acts of racketeering that form a pattern of racketeering activity.").

Defendants argue, and the Court agrees, that even taking the allegations as true and drawing all reasonable inferences in plaintiffs' favor, plaintiffs have not sufficiently established a pattern of racketeering activity. Plaintiffs have not shown that defendants' allegedly fraudulent and intentionally misleading representations concerning the strength of their franchise "amount to or pose a threat of continued criminal activity." *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S.

229, 239 (1989). Further, plaintiffs have not stated facts sufficient to establish that the alleged racketeering activity took place over a substantial period of time. *See Leonard v. J.C. Pro Wear, Inc.*, 64 F.3d 657, 1995 WL 508894, at *1, 3 (4th Cir. 1995) ("[A seven-month] period of time has been held to be insufficient to constitute a RICO pattern in those circuits that have addressed the issue."). Taken together, the allegations are insufficient to establish a pattern of racketeering activity. Because such a pattern is required for Counts 7 and 8, and the Count 9 claim for conspiracy requires a predicate RICO violation that can no longer be established, each count must be dismissed for failure to state a claim on which relief can be granted.

In sum, plaintiffs have alleged sufficient facts to state claims for fraud, intentional misrepresentation, and concealment; negligent misrepresentation; breach of fiduciary duty; and violation of North Carolina's UDTPA. As such, Counts 2, 3, 5, and 6 are not dismissed. Plaintiffs have not alleged sufficient facts to state civil RICO claims, therefore Counts 7, 8, and 9 are dismissed for failure to state a claim on which relief can be granted. Because Counts 1, 4, and 10 were stated only against the corporate defendants, who have not moved to dismiss them, the Court expresses no opinion as to those claims. Accordingly, defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART. Finally, for good cause shown and with no opposition filed on behalf of the plaintiffs, defendant George's motion for leave to file excess pages is GRANTED.

## CONCLUSION

For the above reasons, defendants' motions to dismiss [DE 89, 91, 93] are GRANTED IN PART and DENIED IN PART. Defendant George's motion for leave to file excess pages [DE 88] is GRANTED.

SO ORDERED, this 3 day of ~~January~~ Feb, 2019.

*/s/ Terrence Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE