UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-10-BO

TRIDENT ATLANTA, LLC, DUAL ENERGY, )
LLC, CYNERGETIC AR, LLC, MS. MARCIE )
BINDES d/b/a KS ENTERPRISES, LLC, MR. )
DALE ATKINSON & MRS. ROSE ATKINSON )
d/b/a ROSEDALE THREE, LLC, and MR. )
TRENT MOORE d/b/a LINDSTAN, INC., )
                                                    )
     Plaintiffs, )
                                                    )
v. )     O R D E R
                                                    )
CHARLIE GRAINGERS FRANCHISING, LLC, )
CHARLIE GRAINGERS FRANCHISING, INC., )
LOUIS CRAIG NORTH, GREGORY BRUCE )
GEORGE, and JASON MATTHEW NISTA, )
                                                    )
     Defendants. )

This matter is before the Court on motions to compel arbitration filed by defendants Gregory Bruce George and Jason Matthew Nista. [DE 103, 112]. The motions are ripe for disposition. For the reasons that follow, defendants' motions to compel [DE 103, 112] are GRANTED. The individual plaintiffs—Ms. Marcie Bindes, Mr. Dale Atkinson and Mrs. Rose Atkinson, and Mr. Trent Moore—are directed to arbitrate their claims against all three individual defendants, George, Nista, and Louis Craig North. The action will be stayed pending arbitration as to Ms. Bindes, Mr. and Mrs. Atkinson, and Mr. Moore.

## BACKGROUND

The Court adopts, as if fully set forth herein, the factual and procedural background provided in its February 4, 2019 order. [DE 101]. At that time, the Court granted in part and denied in part the individual defendants' motions to dismiss. In particular, the Court found that plaintiffs had failed to state civil claims under the Racketeer Influenced and Corrupt Organizations Act upon

which relief could be granted, and therefore dismissed Counts 7, 8, and 9 of the plaintiffs' amended complaint. The Court also found that plaintiffs had alleged sufficient facts to state claims against the individual defendants for fraud, negligent misrepresentation, breach of fiduciary duty, and violation of North Carolina's Unfair and Deceptive Trade Practices Act, and therefore did not dismiss Counts 2, 3, 5, and 6. Counts 1, 4, and 10 were brought only against the corporate defendants, as to whom the case is currently stayed. [DE 84]. As such, the Court expressed no opinion on those three causes of action.

After the Court's February 4, 2019 order, the individual defendants filed their answers to plaintiffs' amended complaint. [DE 105, 110, 111]. A scheduling order was entered. [DE 116]. But defendants George and Nista filed motions to compel arbitration, arguing that the franchise agreements signed by the individual plaintiffs contained binding arbitration provisions. [DE 103, 112]. Defendant North, now proceeding *pro se*, did not move to compel arbitration. Plaintiffs have responded in opposition to the motions to compel. [DE 117].

## DISCUSSION

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, governs the resolution of private disputes through arbitration. *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004). Section 2 of the FAA provides that a "written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009) (construing 9 U.S.C. § 2 as making written arbitration agreements binding unless the underlying contract is otherwise void).

The "question of arbitrability" is to be decided by the court unless the parties clearly and unmistakably provide otherwise. *AT&T Technologies, Inc. v. Communications Workers of*

2

*America*, 475 U.S. 643, 649 (1986). Courts have "no choice but to grant a motion to compel arbitration where a valid arbitration clause exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation omitted). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). Accordingly, disagreements related to the scope of arbitration are resolved in favor of arbitration. *AT&T*, 475 U.S. at 650; *Moses H. Cone*, 460 U.S. at 24–25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Broad, general, and vague agreements will not meet the clear-and-unmistakable standard imposed on arbitration agreements. *See AT&T*, 475 U.S. at 645 (holding that the clause committing all "differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder" did not permit the arbitrator to determine arbitrability issues).

The franchise agreements that the individual plaintiffs signed between September 2015 and September 2016 contained the following provisions:

> 16.03 <u>Arbitration.</u> Except as specifically provided under this Agreement, any dispute or claim relating to or arising out of this Agreement must be resolved exclusively by mandatory arbitration by and in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") or another arbitration service agreed to by the parties. Arbitration will be conducted solely on an individual, not a class-wide, basis, unless all parties so agree. No award in arbitration involving Franchisor will have any effect of preclusion or collateral estoppels in any other adjudication or arbitration. A single arbitrator shall be selected in accordance with standard AAA procedure, and the proceedings will be conducted at its Wilmington, North Carolina, office. Each party shall bear all of its own costs and attorneys' fees and one-half of the arbitrator's expenses. The decision of the arbitrator shall be final and binding.
>
> 16.04 <u>Applicability.</u> This dispute resolution section applies to claims by and against all parties and their successors, owners, managers, officers, directors, employees,

3

agents, and representatives, as to claims arising out of or relating to this Agreement, except as stated above. This dispute resolution clause shall survive the termination or expiration of this Agreement.

16.05 <u>Governing Arbitration Law.</u> Notwithstanding any choice of law provision of this Agreement, all issues relating to arbitration or the enforcement of the agreement to arbitrate contained in this Agreement are governed by the U.S. Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) and the U.S. federal common law of arbitration. This federal act preempts any state rules on arbitration, including those relating to the site of arbitration. Judgment on an arbitration award, or on any award for interim relief, may be entered in any court having jurisdiction, and will be binding.

16.06 <u>Governing Law/Consent to Venue and Jurisdiction.</u> Except to the extent governed by the Federal Arbitration Act, the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. Sections 1051 *et seq.*) or other federal law, this Agreement shall be interpreted under the laws of the state of North Carolina and any dispute between the parties shall be governed by and determined in accordance with the substantive laws of the state of North Carolina, which laws shall prevail in the event of any conflict of law. Franchisee and Franchisor have negotiated regarding a forum in which to resolve any disputes, which may arise between them and have agreed to select a forum in order to promote stability in their relationship. Therefore, if a claim is asserted in any legal proceeding involving Franchisee, its officers, directors, managers or partners (collectively, "Franchisee Affiliates") and Franchisor, its parent, subsidiaries or affiliates and their respective officers, directors and sales employees (collectively, "Franchisor Affiliates") the parties agree that the exclusive venue for disputes between them shall be in the state and federal courts of North Carolina or the Wilmington, North Carolina office of the AAA and each party waives any objection they may have to the personal jurisdiction of or venue in the state and federal courts of North Carolina or the Wilmington, North Carolina office of the AAA. Franchisor, Franchisor Affiliates, Franchisee and Franchisee Affiliates each waive their rights to a trial by jury.

16.07 <u>Limitations on Actions.</u> Except for payments owed by one party to the other, and unless prohibited by applicable law, any legal action or arbitration proceeding brought or initiated with respect to any dispute arising from or related to this Agreement or with respect to any breach of the terms of this Agreement must be brought or instituted within a period of two (2) years from the date of discovery of the conduct or event that forms the basis of the legal action or proceeding.

[DE 85-1, p. 66–67]. The language of the arbitration provisions is clear and unmistakable and demonstrates the parties' intent to submit their covered disputes to arbitration. The arbitration provisions are clearly broad enough to extend to all three individual defendants—George, Nista, and North—each of whom was an officer or director of the franchisor. Plaintiffs do not argue that

4

their claims are not covered by the arbitration provisions. Plaintiffs also do not argue that the provisions govern claims against defendants George, Nista, and North. As such, it is clear that the provisions are enforceable here and the individual plaintiffs' claims can be submitted to arbitration.

Plaintiffs ask, however, that the Court nonetheless refuse to submit their claims to arbitration, arguing that "defendant(s) have waived the right to seek arbitration . . . by pursuing, for over a year, a merits based strategy seeking to achieve a favorable legal judgment from this Court by the dismissal of the plaintiffs' claims." [DE 117, p. 1]. Plaintiffs argue that defendants have prejudiced them by first moving to dismiss their amended complaint prior to moving to compel arbitration. For support, plaintiffs rely on two Fourth Circuit decisions: *Degidio v. Crazy Horse Saloon and Restaurant Inc*, 880 F.3d 135 (4th Cir. 2018), and *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577 (4th Cir. 2012). In *Degidio*, the Fourth Circuit affirmed the district court's refusal to enforce an arbitration provision, at least partially because the defendants in that action had spent years litigating the case on its merits before invoking the arbitration provision. In *Wheeling Hospital*, the Fourth Circuit reversed the district court's refusal to enforce an arbitration providing, finding that although the defendant "engaged in some activity inconsistent with the intent to arbitrate," the plaintiff had "nonetheless shown no actual prejudice that resulted" from those inconsistent activities. 683 F.3d at 591. Here, consistent with *Degidio* and *Wheeling Hospital*, defendants did not waive their right to arbitrate this case.

"A litigant may waive its right to invoke the [FAA] by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Fraser v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987). "Arbitration laws are passed to expedite and facilitate the settlement of disputes and avoid the delay caused by litigation," not to provide "a means of furthering and extending delays." *Radiator Specialty Co. v. Cannon Mills*, 97 F.2d 318, 319 (4th Cir. 1938). In determining whether actual

5

prejudice exists, courts look to "(1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity." *Stedor Enters., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir. 1991). In *Degidio*, the Fourth Circuit found that the defendant had "employed judicial proceedings to pursue a litigation strategy for over three years," and had "filed multiple motions for summary judgment, served discovery, and twice asked the district court to certify questions of state law to the South Carolina Supreme Court." 880 F.3d at 141. Here, by contrast, defendants simply moved to dismiss. While the consolidation of two cases prolonged the litigation, defendants' motions to dismiss were granted in part and denied in part within 13 months of the start of litigation, and defendants' initial motions to dismiss were filed within 3 months of being served with the complaint. There has been no other litigation on the merits and the discovery process has only just begun. Here, unlike in *Degidio*, there has only been a limited delay and limited trial-oriented activity.

Plaintiffs argue that they have been prejudiced because they have been forced to reveal "significant elements" of their legal strategy in responding to the motions to dismiss and have incurred "significant expense" as a result of the litigation to this point. [DE 117, p. 9–10]. These claims of prejudice are unpersuasive. In *Wheeling Hospital*, the Fourth Circuit noted that it has never adopted "a bright line rule that a party is always prejudiced by the filing of a dispositive motion," and instead takes "into account all of the above factors in determining the existence of prejudice." 683 F.3d at 590. The Fourth Circuit further noted that in *Fraser*, there was prejudice "in part because [one party] 'had to respond to a number of potentially damaging motions, including a motion for partial summary judgment and three motions to dismiss.'" *Wheeling Hosp.*, 683 F.3d at 590 (citing *Fraser*, 817 F.2d at 252). Again, in this case, plaintiffs have simply endured defendants' Rule 12(b)(6) motions to dismiss. In consideration of the Fourth Circuit's recognized

6

factors, the Court finds that plaintiffs have not been actually prejudiced by defendants' conduct, and that defendants have therefore not waived their right to arbitrate this case.

Plaintiffs do not argue that they should not be bound by the arbitration provisions of the franchise agreements because they were fraudulently induced to enter those agreements. Whether or not the agreements were fraudulently induced can be properly resolved in arbitration. Because plaintiffs do not argue that the particular arbitration provisions were fraudulently induced, there is no need to refuse to submit plaintiffs' claims to arbitration on that basis. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 811 (7th Cir. 2011) ("The only relevant inquiry at this stage is whether the arbitration clause *itself* was fraudulently induced—that is, whether there was fraud that 'goes to the "making" of the agreement to arbitrate.'") (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)).

Defendants urge this Court to dismiss the individual plaintiffs' claims, rather than stay them pending arbitration. While this is certainly the typical practice when all of the claims are subject to arbitration, *see Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001), the Court finds that in this particular consolidated case, it is better to stay the individual plaintiffs' claims while arbitration is pending. In particular, the issue of fraudulent inducement adds a layer of some complexity to the ultimate arbitrability of plaintiffs' claims. Further, the corporate plaintiffs—Trident Atlanta, Dual Energy, and Cynergetic—do not have arbitration provisions in their franchise agreements, and defendants have not moved to compel arbitration with respect to those plaintiffs. As such, their claims will not be submitted to arbitration, and their claims will not be stayed. The Court, in its discretion, therefore finds it more appropriate to stay, rather than dismiss, the individual plaintiffs' claims at this stage.

In sum, the individual plaintiffs— Ms. Marcie Bindes, Mr. Dale Atkinson and Mrs. Rose Atkinson, and Mr. Trent Moore—entered franchise agreements containing enforceable arbitration

7

provisions. The arbitration provisions cover all of the individual plaintiffs' remaining claims, and are effective as to defendants George, Nista, and North. Defendants have not waived their right to compel arbitration. As such, defendants' motions must be granted, and the individual plaintiffs' claims must be submitted to arbitration.

## CONCLUSION

For these reasons, defendants' motions to compel [DE 103, 112] are GRANTED. This action is hereby STAYED as to Ms. Bindes, Mr. and Mrs. Atkinson, and Mr. Moore in favor of arbitration proceedings pursuant to 9 U.S.C. § 3. The parties are ORDERED to notify the Court within 14 days of the conclusion of arbitration as to the result of arbitration and whether any claims or issues remain for this Court to resolve.

SO ORDERED, this _4_ day of April, 2019.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE