UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-10-BO

TRIDENT ATLANTA, LLC, DUAL ENERGY, )
LLC, CYNERGETIC AR, LLC, and MR. DALE )
ATKINSON & MRS. ROSE ATKINSON d/b/a )
ROSEDALE THREE, LLC, )
                                                    )
     Plaintiffs, )
                                                    )
v. )                     O R D E R
                                                    )
CHARLIE GRAINGERS FRANCHISING, LLC, )
CHARLIE GRAINGERS FRANCHISING, INC., )
LOUIS CRAIG NORTH, GREGORY BRUCE )
GEORGE, and JASON MATTHEW NISTA, )
                                                    )
     Defendants. )

This matter is before the Court on four motions for summary judgment and two motions to dismiss. [DE 212, 217, 219, 223, 226, 239]. Each of the motions is ripe for disposition. For the reasons that follow, plaintiff Atkinson's motion to dismiss as to defendant North without prejudice [DE 212] is granted, plaintiffs' motion to dismiss defendant North's motion for summary judgment [DE 239] is denied, Defendants' motions for summary judgment [DE 217, 223, 226] are granted, and plaintiffs' motion for summary judgment [DE 219] is denied.

BACKGROUND

In 2015, the individual defendants—Mr. Louis C. North, Mr. Gregory B. George, and Mr. Jason M. Nista—formed Charlie Graingers Franchising, LLC. [DE 85, ¶ 13]. Two years later, in 2017, they converted the LLC into Charlie Graingers Franchising, Inc., which remains in operation. *Id.* Defendants North, George, and Nista were the central figures in both entities, collectively "Charlie Graingers." The entities were created to offer "franchises to operate a hot

dog restaurant" under the Charlie Graingers trade name, featuring "various hot dog recipes, beef brisket, pork barbeque, soups and side dishes." [DE 85-1, p. 2].

In October 2015, defendants North, George, and Nista drafted a Franchise Disclosure Document (FDD) to present to prospective franchisees. [DE 85, ¶ 14]. Two versions of the FDD were prepared for two different groups: prospective "area representative" franchises and prospective individual franchisees. [DE 85, ¶¶ 15–16; 85-1; 85-2]. Three of the plaintiffs in this consolidated action were area representative franchisees: Trident Atlanta, LLC in Georgia, Dual Energy, LLC in Alabama, and Cynergetic AR, LLC in Florida. [DE 85, ¶ 1]. The remaining plaintiff, Mr. Dale Atkinson and Mrs. Rose Atkinson d/b/a Rosedale Three, LLC, is an individual franchisee. *Id.* ¶ 2. Each of the plaintiffs separately received the FDD between May 2015 and December 2015. *Id.* ¶¶ 23–24.

The FDD expressly represented that the franchisors would grant to each of the area plaintiffs the right to develop and operate Charlie Graingers franchises and to offer franchises to third parties within the designated area. *Id.* ¶ 25(a). In return, the area plaintiffs were required to establish and operate at least one Charlie Graingers restaurant in the designated area. *Id.* ¶ 25(b). In the FDD, defendants further represented to all of the plaintiffs that they would provide a wide variety of resources and operational support, including the following: an operating manual, site evaluations, advice on selecting a site and negotiating a lease, assistance remodeling and installing equipment and fixtures, help obtaining inventory and supplies, a comprehensive training program, a toll-free support line, marketing and promotional materials, and so on. *Id.* ¶ 25(a)–(r).

In the months that followed, the defendants provided further written representations to each of the plaintiffs, including that they had "[O]ver 350 Franchise Commitments," would provide "24/7-Social Media Savvy," had the "[C]leanest Restaurants in America," and that defendant

2

North had over forty years of restaurant experience. [DE 85, ¶ 28(a)–(d); 85-3]. In these subsequent written communications, defendants also claimed that a Charlie Graingers franchise was a "low cost-low overhead foolproof restaurant concept" that was "guaranteed to be successful." [DE 85, ¶ 28(f)]. Defendants went on to make many more representations about the strength of their national "concept and system," their supply agreements, their relationships with other brands, their "franchise real estate department" and its "connections across the country." *Id.* ¶ 28(g)–(y). Defendants then provided even more promotional materials emphasizing the "world-class" and "endless" support that the plaintiffs would receive. [DE 85, ¶¶ 29–31; 85-4].

Between September 2015 and September 2016, each of the plaintiffs entered into franchise agreements with defendants, paying at least $19,750 and as much as $158,000 in franchise fees. [DE 85, ¶¶ 35–36]. In connection with the franchise agreements, the plaintiffs also signed "General Release" documents, which provided as follows:

> [Franchisee] and its shareholders, officers, and directors does hereby release and forever discharge CHARLIE GRAINGERS FRANCHISING, LLC its, successors, agents, assigns, officers, directors, shareholders, employees, representatives, and any and all other persons, firms and corporations whatsoever, from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, both known and unknown . . . .

[DE 85-1, p. 116]. The plaintiffs also signed an acknowledgement in the franchise agreements that they had "conducted an independent investigation," that operating a franchise "involves business risk," and that they had "not received any express or implied warranty or guaranty regarding potential volume, profits, or success." [DE 85-1, p. 69–70]. The franchise agreements specified that the franchisor was not a fiduciary of plaintiffs. [DE 85-1, p. 67].

In January 2018, the area plaintiffs initiated this action, alleging that they had been fraudulently induced into entering the franchise agreements and that defendants had made intentional and negligent misrepresentations, breached their fiduciary duty and duty of good faith

3

and fair dealing, violated North Carolina's Unfair and Deceptive Trade Practices Act, and violated the Racketeer Influenced and Corrupt Organizations (RICO) Act. [DE 8]. Around the same time, the individual plaintiffs filed a separate action making similar allegations against the same defendants. In August 2018, the Court consolidated the two actions under Federal Rule of Civil Procedure 42(a). [DE 84].

In September 2018, plaintiffs filed an amended complaint with ten causes of action: (1) rescission of their franchise agreements; (2) fraud, intentional misrepresentation, and concealment; (3) negligent misrepresentation; (4) breach of the duty of good faith and fair dealing; (5) breach of fiduciary duty; (6) violation of North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA); (7) acquiring or maintaining an interest in an enterprise engaged in interstate commerce through a pattern of racketeering activity, in violation of 11 U.S.C. § 1962(b); (8) conducting an enterprise engaged in interstate commerce through a pattern of racketeering activity, in violation of 11 U.S.C. § 1962(c); (9) conspiring to violate the RICO Act, in violation of 11 U.S.C. § 1962(d); and (10) breach of contract. [DE 85]. Claims one, four, and ten were brought against the corporate defendants only. *Id.* Soon after, all three individual defendants, George, Nista, and North, moved to dismiss each of the claims against them on a variety of grounds. [DE 89, 91, 93]. On February 3, 2019, this Court dismissed the RICO Act claims, claims seven through nine, for failure to state a claim. [DE 101].

In February 2019, defendants George and Nista moved to compel arbitration. On April 4, 2019, this Court granted those motions and directed individual plaintiff Atkinson to arbitrate his claims against all three individual defendants, George, Nista, and North. [DE 122]. Plaintiff Atkinson's claims against defendant North were restored to this Court on February 18, 2020 after

4

the arbitration was administratively termination by the American Arbitration Association following defendant North's failure to pay required arbitration fees. [DE 196].

In June 30, 2020, plaintiff Atkinson moved to dismiss without prejudice his claims as to defendant North pursuant to Federal Rule of Civil Procedure 31(a)(2). [DE 213]. This motion is unopposed. In July of 2020, plaintiffs Trident Atlanta, Dual Energy, and Cynergy and all individual defendants, George, Nista, and North, all moved for summary judgment on the claims brought against the individual defendants: fraud, intentional misrepresentation, and concealment; negligent misrepresentation; breach of fiduciary duty; and violation of North Carolina's UDTPA. [DE 217, 219, 223, 226]. In response to defendant North's motion for summary judgment, plaintiffs moved to dismiss the motion. [DE 239]. All of the motions are ripe for disposition.

## DISCUSSION

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," as merely reciting the elements of a cause of action with the support of conclusory statements does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

A movant is entitled to judgment as a matter of law if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable

jury could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotations and alterations omitted). Once the moving party meets its initial burden under Rule 56(c), to survive summary judgment, the nonmoving party must provide sufficient evidence to demonstrate that there is a genuine issue of material fact for trial. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In determining whether a genuine issue of material fact exists for trial, a court must view the evidence in the light most favorable to the nonmoving party unless the nonmovant's version of events is "blatantly contradicted" by the record. *Id.* Moreover, "a mere scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (internal quotations omitted).

<u>Plaintiff Atkinson's Motion to Dismiss Without Prejudice</u>

Plaintiff Atkinson is a resident of North Carolina, and, because of the Court's dismissal of the federal RICO claims, the referral of the claims brought by the individual plaintiffs to arbitration, and the subsequent return of plaintiff Atkinson's claims against defendant North to this Court, the complete diversity required for this Court to have diversity jurisdiction no longer exists for plaintiff Atkinson's claims against defendant North. Therefore, plaintiff Atkinson moves to dismiss without prejudice his claims against defendant North pursuant to Federal Rules of Civil Procedure Rule 41(a)(2) and restore complete diversity regarding his claims against the remaining defendants.

Rule 41(a)(2) provides that a plaintiff may voluntarily dismiss an action by court order, on terms that the court considers proper. Dismissal under this provision operates as a dismissal without prejudice. When deciding whether to grant a motion to voluntarily dismiss, a court

6

considers factors such as (1) the opposing party's effort and expense, (2) whether there was excessive delay and lack of diligence by the plaintiff, (3) the stage of the litigation, and (4) the sufficiency of the explanation for the need of a dismissal. *Miller v. Terramite Corp.*, 114 Fed. App'x 536, 539 (4th Cir. 2004) (citation omitted). The decision to grant such a motion lies within the court's discretion. *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987) (citations omitted).

The Court, in its discretion, finds good cause to allow dismissal of plaintiff Atkinson's claims against defendant North without prejudice. Defendant North has not been represented by counsel during these proceedings, and therefore has not incurred substantial attorney's fees. Although the parties have already filed multiple motions for summary judgment, the dismissal of these claims would not affect the present stage of the litigation, and all parties will have available to them all discovery previously conducted either before the Court or before an arbitrator. The Court discerns no delay or lack of diligence on the part of plaintiff Atkinson. Finally, defendant North has failed to come forward and argue that dismissal would prejudice him in any way, and there is no reason to believe that any of the other defendants would be prejudiced by granting this motion. Therefore, this Court dismisses plaintiff Atkinson's claims against defendant North without prejudice and without conditions.

Defendant North's Motion for Summary Judgment

Defendant North has filed a motion for summary judgment on all of plaintiff's claims. In its supporting memorandum, defendant North incorporates the legal arguments set forth in the memoranda in support of the motions for summary judgment filed by defendants George and Nista. Plaintiffs move to dismiss defendant North's motion for summary judgment because Local Rule 7.1e requires all motions to be accompanied by a supporting memorandum. In the alternative, plaintiffs ask the Court to treat the memoranda submitted by plaintiffs in response to the motion

for summary judgements of defendants Nista and George as its response to defendant North's memorandum.

A memorandum in support of a motion must contain a concise summary of the nature of the case, a concise statement of the facts that pertain to the matter before the court, and a brief argument relating to the matter before the court. Local Civil Rule 7.2(a). The memoranda that defendant North seeks to incorporate meet all of those requirements. This Court will consider the memorandum filed by defendant North and treat plaintiffs' memoranda in opposition to the other defendants' motions for summary judgment as a response. Plaintiffs' motion to dismiss defendant North's motion for summary judgment is therefore denied.

Motions for Summary Judgment

Plaintiffs and the individual defendants all move for summary judgment on plaintiffs' breach of fiduciary duty claim. The existence of a fiduciary duty depends on there being a fiduciary relationship between the parties. *Dalton v. Camp*, 353 N.C. 647, 651 (2001). To state a claim for breach of fiduciary duty, plaintiffs must prove that there existed (1) facts and circumstances creating a relationship of trust and confidence which (2) "surrounded the consummation of the transaction in which the defendant[s] [are] alleged to have taken advantage of the relationship" and (3) that defendants took advantage of their own benefit. *Self v. Yelton*, 688 S.E.2d 34, 39 (N.C. 2010) (quoting *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 32 (2003)). A de facto fiduciary relationship arises when "there has been special confidence reposed in one side who in equity and good conscious is bound to act in good faith and with due regard to the interest of the one reposing confidence." *Dalton*, 353 N.C. at 650–51 (citations omitted). The existence of such a relationship depends on the circumstances of the situation. *See HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 588 (1991). One factor to consider is the sophistication of the parties

in the form of the parties' business experience and education level, as "North Carolina courts have only found a fiduciary relationship when one party 'figuratively [held] all of the cards.'" *Broussard v. Meineke Disc. Muffler Shops*, 155 F. 3d 331 (4th Cir. 1998); *see Kaplan v. O.K. Technologies*, 196 N.C. App. 469, 476 (2009) (considering plaintiffs' business experience and education level in finding that the defendant did not "figuratively hold all the cards" with respect to plaintiffs). Another factor is domination and influence, and, in an arms-length transaction, a fiduciary duty only exists when one party thoroughly dominates the other. *S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese*, 284 F.3d 518, 533 (4th Cir. 2002) (citing *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663 (1990)). There is a near universal rejection of imposing fiduciary duties in the franchise setting, and "imposing fiduciary concepts into the ordinary franchise relationship [is not only] unworkable, it is necessary." *Broussard*, 155 F.3d at 348.

Here, there is no evidence that any of the individual defendants dominated the plaintiffs, and plaintiffs have failed to establish any evidence that they reposed a special trust or confidence in any of the individual defendants. Each plaintiff negotiated specific changes, terms, and conditions in its respective agreement. Plaintiff Cynergetic made trips to Wilmington, North Carolina to conduct customer counts, studied demographics, and created financial models based on its unfettered access to the internal working, finances, and costs associated with opening a Charlie Graingers store. Plaintiff Trident Atlanta not only spent months negotiating its agreements, it also created the entire structure of the agreements. Plaintiff Dual Energy interviewed Charlie Graingers franchisees and other area representatives before entering into its agreement a year following its initial discussion about the agreement. Throughout this process, each of the plaintiffs used its own attorney, and plaintiffs all testified that they had legal counsel review the FDD and the agreement. Plaintiffs were also highly sophisticated. Plaintiff Cynergetic is comprised of

9

executive level financial professionals and was even led by the managing director of the largest investment management company in the world at the time of entering the agreement. Plaintiffs Trident Atlanta and Dual Energy are comprised of members who have operated multi-unit franchises for decades. Based on these facts, there is nothing in this case that would make the relationships between plaintiffs and defendants anything but an ordinary relationship, and the individual defendants did not breach a fiduciary duty. *See Broussard*, 155 F.3d at 358. Therefore, defendants' motions for summary judgment are granted and plaintiffs' motion for summary judgment is denied as to the breach of fiduciary claim.

Plaintiffs and the individual defendants also move for summary judgment on plaintiffs' fraudulent and negligent misrepresentation claims. To state a claim for fraud or intentional misrepresentation, plaintiffs must show (1) false representation or concealment of a material fact, which is (2) reasonably calculated to deceive and is (3) made with the intent to deceive, and which (4) does in fact deceive, resulting in (5) damage to the injured party, "where any reliance on the allegedly false representations must be reasonable." *Forbis v. Neal*, 361 N.C. 519, 526–27 (2007); *see Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992). In order to state a claim for negligent misrepresentation, plaintiffs must show that they (1) justifiably relied (2) to their detriment (3) on information prepared without reasonable care (4) by someone who owed them a duty of care. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988).

Finally, plaintiffs and the individual defendants move for summary judgment on plaintiffs' violation of the UDTPA claim. To support such a claim, plaintiffs must prove that (1) defendants committed an unfair or deceptive act which (2) affected commerce and (3) proximately caused the plaintiffs' harm. *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 322–23 (N.C. 2006)

10

Case 7:18-cv-00010-BO   Document 257   Filed 11/23/20   Page 10 of 15

(citing *Pleasant Valley Promenade v. Lechmere, Inc.*, 464 S.E.2d 47, 58 (N.C. 1995)). When, as here, the alleged UDTPA violation is a misrepresentation, a plaintiff must prove detrimental reliance on the alleged misrepresentation to satisfy the proximate cause requirement. *Solum v. CertainTeed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) (citing *Caper Corp. v. Wells Fargo Bank, N.A.*, 578 Fed. Appx. 276 (4th Cir. 2014); *Bumpers v. Comm'y Bank of N. Va.*, 367 N.C. 81, 88 (2013)). Thus, plaintiffs must prove both actual and reasonable reliance. *Id.* (citing *Bumpers*, 367 N.C. at 88).

Here, plaintiffs, all corporate entities, did not rely on the defendants' representation, and plaintiffs' fraudulent and negligent misrepresentation and UDTPA claims therefore fail. In order to show actual reliance, there must be proof that plaintiffs "affirmatively incorporated the alleged misrepresentation into [their] decision making process." *Id.* at 90. Plaintiff Trident Atlanta is jointly owned by Yafei Zheng, Dilesh Patel, and Shaun Johnson, each of whom own one-third of the corporation. Zheng did not have the authority to enter into the franchise agreement on his own, as the vote of all three individuals was required. Johnson did not review any of the documents that allegedly contained misrepresentations, and there is no evidence showing that Patel reviewed or relied on any of these materials. Plaintiff Dual Energy is co-owned by Mike Osman and Jason Blythe, who make all decisions related to the corporation jointly. Blythe does not recall reading or receiving the franchise brochure or the marketing materials, and he does not remember anything in the FDD influencing him in his decision to execute the franchise agreement. Finally, plaintiff Cynergetic is owned by Randy Robertson, who owns about twenty percent of the corporation, and six other individuals, who jointly own the remaining interest. There is no evidence in the record that anyone other than Blythe relied on or received the documents allegedly containing misrepresentations.

11

Resultingly, since key decisionmakers for each plaintiff did not rely upon, and in many cases did not even receive or review, the relevant documents, plaintiffs could not have relied upon defendants' representations. *See Gunnells v. Healthplan Servs.*, 348 F.3d 417, 436–37 (4th Cir. 2003) (finding that "if an individual plaintiff in this case were unaware of the alleged misrepresentations, but nevertheless purchased the Plan, we see no basis for presuming that the misrepresentations nevertheless were a proximate cause of her damages"); *Cincinnati Ins. Co. v. Centech Bldg. Corp.*, 286 F. Supp. 2d 669, 683 (M.D.N.C. 2003) (stating that "[b]ecause 'actual reliance is direct reliance upon false information,' where there has been no evidence that Cincinnati actually relied upon any false information supplied by Lambert . . . defendants have met their burden of proof that there is an essential element of plaintiffs' claim of negligent misrepresentation regarding which there is no genuine issue of material fact and therefore summary judgement [is] properly granted to defendants'") (quoting *Brinkman v. Barrett Kays & Assocs.*, 155 N.C. App. 738, 742–43 (2003)). Furthermore, none of the plaintiffs relied on the franchise brochure or the marketing materials specifically because plaintiff Trident Atlanta agreed to be an area representative prior to receiving these documents and plaintiffs Cynergetic and Dual Energy waited more than one year after receiving those documents to enter into the agreement.

Additionally, even if plaintiffs did rely on defendants' statements, that reliance was unreasonable. Under North Carolina law, reliance is unreasonable as a mater of law when a plaintiff relies upon a representation that directly contradicts the express terms of a written contract. *Solum*, 147 F. Supp. 3d at 411–12 (citing *Caper Corp. v. Wells Fargo Bank, N.A.*, No. 7:12-CV-357, 2013 U.S. Dist. LEXIS 119506, at *6–7 (E.D.N.C. Aug. 22, 2013) (unpublished), *aff'd*, 578 F. App'x 276 (4th Cir. 2014) (per curiam) (unpublished); *Int'l Harvester Credit Corp. v. Bowman*, 69 N.C. App. 21, 219–220 (collecting cases)). This principle comports with the "duty

12

Case 7:18-cv-00010-BO   Document 257   Filed 11/23/20   Page 12 of 15

to act with reasonable prudence for [one's] own safety . . . . One who signs a written contract without reading it, when he can do so understandingly is bound thereby unless the failure to read is justified by some special circumstance." *Davis v. Davis*, 256 N.C. 468, 472–73 (1962).

In this case, each plaintiff's agreement stated that "[e]xcept as listed below, Charlie Graingers Franchising, LLC is not required to provide you with any assistance," and then provided a list of support areas, which did not mention site selection or franchise marketing, which plaintiffs allege defendants promised. The agreements make a variety of statements and warnings regarding defendants' inability to represent a franchisee's future financial performance, the number of open franchise stores and signed franchise agreements, and defendants' responsibilities and plaintiffs' obligations. Furthermore, the agreements specifically states that "[t]he terms and conditions contained herein constitute the entire agreement between the parties regarding the subject matter herein, and there are no representations, inducements, promises, or agreements, oral or otherwise, between the parties not embodied herein" and that "AREA REPRESENTATIVE FURTHER ACKNOWLEDGES THAT NO ONE HAS MADE ANY OTHER REPRESENTATION TO AREA REPRESENTATIVE WHICH IS NOT EXPRESSLY SET FORTH HEREIN OR IN THE FDD." Furthermore, each plaintiff responded to a questionnaire used by defendants stating it had the opportunity to discuss the benefits and risks of being an area representative with a professional advisor and understood those risks and that no person on behalf of defendant had made any promise regarding the amount of money plaintiffs may earn, the amount of success plaintiffs could expect, or the support service or assistance that defendants would provide to plaintiffs.

After considering defendants' alleged misrepresentation and this language in the agreements between the parties, and the prospective franchisee questionnaire, this Court determines that plaintiffs could have learned the truth about defendants' legal obligations by

reading their agreements. *See Caper Corp.*, 2013 U.S. Dist. LEXIS 119506, at *7 ("Caper could have learned the truth about its legal obligation[s] . . . by reading the agreements."); *Stunzi v. Medlin Motors, Inc.*, 214 N.C. App. 332, 340–41 (2011) (holding that "one who signs a paper writing is under a duty to ascertain its contents" and "is held to have signed with full knowledge and assent as to what is therein contained").

Finally, many of the alleged "representations" are mere puffery. A person cannot reasonably rely on mere puffery. *Solum*, 147 F. Supp. at 412 (citing *McKee v. James*, No. 09CVS3031, 2014 NCBC LEXIS 74, at *10 (N.C. Super. Ct. Dec. 31, 2014). "Puffery is an exaggerated statement which no reasonable buyer would be justified in relying on or a claim of superiority so vague that nothing can be understood from it except that it is an opinion. *Id.* (citations omitted). Specifically, defendants' statements that they had the "cleanest restaurants in America" and that plaintiffs would receive "world class," "endless," and "social media savvy" support were nonactionable puffery that plaintiffs could not reasonably rely upon. *Bledsoe v. FCA US LLC*, F. Supp. 3d 626, 649 (E.D. Mich. 2019); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 347 (S.D.N.Y. 2015).

Because plaintiffs did not reasonably rely on the documents allegedly containing material misrepresentations, plaintiffs may not succeed on their fraudulent misrepresentation, negligent misrepresentation, and UDTPA claims, all of which require that plaintiff show actual and reasonable reliance.

## CONCLUSION

For the above reasons, plaintiff Atkinson's motion to dismiss as to defendant North without prejudice is GRANTED. [DE 212]. Plaintiffs' motion to dismiss defendant North's motion for summary judgment is DENIED. [DE 239]. Defendants' motions for summary judgment are

14

GRANTED [DE 217, 223, 226], and plaintiffs' motion for summary judgment is DENIED [DE 219]. The clerk is DIRECTED to close the case as to plaintiff Atkinson's claims against defendant North. Defendants George, Nista, and North are entitled to summary judgment on the claims brought against them by plaintiffs Trident Atlanta, Cynergetic, and Dual Energy.

SO ORDERED, this 22 day of November, 2020.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE